UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**Patriot Insurance Company**

    **v.**                                      Case No. 17-cv-73-PB
                                                Opinion No. 2017 DNH 229

**Holmes Carpet Center, LLC, et al.**


**MEMORANDUM AND ORDER**


This declaratory judgment action concerns a commercial general liability insurance policy issued by Patriot Insurance Company ("Patriot") to Holmes Carpet Center, LLC (the "Carpet Center"). Patriot seeks a determination that it has no duty to defend or indemnify the Carpet Center in an underlying action asserting claims for breach of contract and violation of New Hampshire's Consumer Protection Act because the action seeks damages only for uncovered defective workmanship. The matter is before me on Patriot's motion for summary judgment.


                **I.**    **BACKGROUND**

**A.**    **The Insurance Policy**

The insurance policy at issue in this case provides in pertinent part that Patriot "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance

applies." Doc. No. 12-2 at 115, § I(1)(a). The policy goes on to explain that coverage is available only if the "bodily injury" or "property damage" is caused by an "occurrence." See id. at 115, § I(1)(b)(1). An "occurrence," in turn, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Doc No. 12-3 at 8, § V(13). "Property damage" is further defined as "[p]hysical injury to tangible property, including all resulting in loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." See id. at 9, § V(17).

**B. The Underlying Action**

1. Underlying Complaint

Patriot seeks a declaratory judgment that it has no duty to defend or indemnify the Carpet Center in a suit filed against it by Red Oak Apartments, LLC ("Red Oak"), in Hillsborough County Superior Court.[1] See Complaint, Red Oak Apartments, LLC v. Holmes Carpet Center, LLC, et al., No. 216-2015-CV-00807 (N.H. Super. Ct. Nov. 11, 2016); see also Doc. No. 12-1 (copy of state

---

[1] Patriot named Peter Holmes as an additional defendant because Red Oak sued both the Carpet Center and Holmes. Red Oak, however, has since abandoned its claims against Holmes. Thus, I focus my analysis on the Carpet Center's right to a defense and indemnification. To the extent that Holmes intends to press his own claim for coverage, his claim suffers from the same deficiencies that doom the Carpet Center's coverage claim.

2

court complaint). The complaint in the underlying action alleges that Red Oak, which owns and manages several rental properties, hired the Carpet Center to install Versalic vinyl plank flooring in approximately 195 of its apartment units. Doc. No. 12-1 at 2. Red Oak purportedly paid the Carpet Center more than $272,000 for materials and labor in connection with the flooring installation. Id. Shortly after the Carpet Center completed its work, flooring planks in several units began to shift and slide out of place, creating large gaps between the planks. Id. at 2-3. Red Oak notified the Carpet Center of the issue and it subsequently performed repair work in some of the units. Id. at 3. Red Oak, however, was ultimately dissatisfied with the Carpet Center's remedial efforts, and sued for breach of contract and violation of the New Hampshire Consumer Protection Act, N.H. R.S.A. Chapter 358-A. See id. at 3.

The underlying complaint alleges that the Carpet Center "failed to complete the contract work in a workmanlike manner in accordance with accepted flooring installation practices . . . [and] failed, refused, and neglected to repair the flooring in a good and workmanlike manner." Id. at 4. The complaint further alleges that the Carpet Center "deceptively misrepresented the quality and character of [its] services" in connection with the

flooring installation, in violation of Chapter 358-A.  Id. at 4-5.  As a result, Red Oak claims it suffered unspecified damages.

Upon receiving the complaint, the Carpet Center submitted an insurance claim to Patriot requesting a defense and indemnification.  Doc. No. 12 at 3.  Patriot, in turn, commenced the instant declaratory judgment action.

2. Anticipated Damage to Apartment Units, Due to Removal

As part of its supplemental briefing in this case, the Carpet Center produced correspondence from Red Oak's counsel and its retained expert "indicating that property damage is an aspect of the underlying claim."  Doc. No. 24 at 2.  Red Oak's expert identified specific areas in the apartment units that he anticipates will be damaged during the removal of the vinyl flooring and its attendant components.  See Doc. No. 24-3.  According to the expert, Red Oak should "expect door jambs, baseboards and any vertical surface between the moldings to be scrapped, scratched and marred" during the removal process.  See id.  Such damage will apparently require spackling, sanding, and painting to repair.  See id.  Expected damage to drywall will require similar repairs.  See id.  He further opined that, in most cases, moldings will likely be "fractured, broken and damaged beyond repair; requiring full replacement, priming and painting."  See id.

4

## II. **STANDARD OF REVIEW**

This case concerns both Patriot's duty to defend and its duty to indemnify. The duty to defend is broader than the duty to indemnify: whereas the duty to indemnify arises only when the insured is actually liable, the duty to defend turns on the nature of the allegations against the insured. See Great Am. Dining, Inc. v. Phila. Indem. Ins. Co., 164 N.H. 612, 627 (2013).

The starting point in determining whether an insurer has a duty to defend is the policy itself. The court must first construe the relevant policy language and resolve all ambiguous terminology in favor of coverage. Hunt v. Golden Rule Ins., 638 F.3d 83, 86 (1st Cir. 2011). Then, the court will review the pleadings in the underlying action to determine whether they can be reasonably construed to assert a covered claim. Todd v. Vt. Mut. Ins. Co., 168 N.H. 754, 759 (2016). "In cases of doubt as to whether the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor." Id.

In evaluating Patriot's summary judgment motion, I look both to Red Oak's complaint and the additional information the Carpet Center has obtained from Red Oak that further describes

5

its claims.  I will grant Patriot's motion for summary judgment only if the record unambiguously establishes that the Carpet Center has no right to a defense.

### III.  ANALYSIS

Patriot argues that it does not have a duty to defend the Carpet Center against Red Oak's claims because Red Oak is seeking damages for uncovered defective workmanship rather than damages caused by an "occurrence."  I agree.

The New Hampshire Supreme Court has explained that "defective work, standing alone, does not constitute an occurrence." Concord Gen. Mut. Ins. Co. v. Green & Co. Bldg. & Dev. Corp., 160 N.H. 690, 693 (2010).  This is because an occurrence must be an "accident" and "[t]he fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship." McAllister v. Peerless Ins. Co., 124 N.H. 676, 680 (1984); see also 9A Steven Plitt et al., Couch on Insurance § 129:4 (3d ed. 2016).  Cases applying this principle demonstrate that an insurer has no obligation to defend a claim that seeks to recover only the cost of repairing defective work.  Instead, when considering claims for damages caused by defective work, an insurer must defend only claims that seek compensation for additional damages that fortuitously

result from the defective work. See, e.g., Concord Gen. Mut. Ins. Co., 160 N.H. at 694 (no coverage for repairs to defective chimneys required to prevent carbon monoxide infiltration); Webster v. Acadia Ins. Co., 156 N.H. 317, 322 (2007) (coverage for damage to roof rafters produced by snow accumulation on defective roof); High Country Assocs. v. N.H. Ins. Co., 139 N.H. 39, 43 (1994) (coverage for damage to walls caused by water seepage resulting from defective workmanship); McAllister, 124 N.H. at 680-81 (no coverage for cost of repairing defective landscaping and leech field); Hull v Berkshire Mut. Ins. Co., 121 N.H. 120 (1981)(no coverage for repair of defective masonry work); see also Fletch's Sandblasting and Painting, Inc. v. Colony Ins. Co., 2017 DNH 097, 10 (2017) (no coverage for repair of defective work).

The Carpet Center argues that these precedents do not foreclose its demand for a defense because Red Oak has not limited its damage claim to the cost of repairing the defective work itself. According to the Carpet Center, Red Oak intends to claim that door jambs, baseboards, dry wall, and fixtures will inevitably be damaged when the allegedly defective work is replaced. Because Red Oak intends to include the cost of replacing this property in its damage claim, and the property is not part of the Carpet Center's allegedly defective work, the

7

Carpet Center argues that at least a portion of Red Oak's damage claim is for covered property damage.[2]

I am unpersuaded by the Carpet Center's argument because it cannot point to a fortuitous event or exposure as a cause of the damage to the property that will need to be replaced when the defective tile is removed. As I have explained, the policy at issue provides coverage only for personal injury or property damage caused by an occurrence, and an insured's defective work does not satisfy this requirement because it lacks the requisite fortuity. This principle applies regardless of whether the claim is for damage to the property that the insured worked on directly or other property that requires repair or replacement in order to correct the defective work. In both instances, the sole cause of the property damage is the insured's defective work, which cannot qualify as an occurrence. In the present case, any property that will be damaged when the defective tile is replaced will be solely the result of the Carpet Center's

---

[2] The Carpet Center also argues that the vinyl flooring underwent "cupping" or warping after it was installed, due to a manufacturing defect, and that the cupping constitutes an "occurrence." This argument fails because the floor tiles themselves are part of Holmes' work even though he obtained them from an independent source. Therefore, defects in the floor-tile material cannot constitute an "occurrence," regardless of whether they originated at the manufacturing stage or at some other time.

8

defective workmanship rather than some intervening fortuitous event or exposure. Therefore, the Carpet Center is not entitled to a defense because the underlying action does not seek to recover for property damage caused by an occurrence.

The Carpet Center appears to rely on Concord General for the proposition that fortuity is not required to support a defective workmanship claim so long as the claim seeks coverage for damage to property other than the property that is the subject of the insured's defective workmanship. I read Concord General differently. In that case, the court was asked to review a determination by the trial court that carbon monoxide that leaked from defective chimneys did not constitute "property damage." 160 N.H. at 692. In affirming the trial court's order, the court restated its commitment to the fortuity requirement but ruled that coverage was not available because the carbon monoxide infiltration was not itself tangible "property damage." Id. at 693-94. Thus, coverage was denied in Concord General not because the carbon monoxide infiltration was not fortuitous, which it clearly was, but because the carbon monoxide infiltration did not cause tangible "property damage."

The Carpet Center's heavy reliance on Cogswell Farm Condominium Assoc. v. Tower Group, Inc., 167 N.H. 245 (2015) also does nothing to advance its case. There, the insurers

9

sought to avoid coverage for damages resulting from faulty "weather barrier" components of condominium units, which included water/ice shield, siding, and the like. See id. at 246. The underlying dispute alleged that the components had been defectively constructed, which resulted in damage to both the interiors and exteriors of the units due to water leaks. See id. The fortuitous event or exposure triggering coverage in that case was continued exposure to rain or ice. See id. The central issue before the court was the applicability of various coverage exclusions, specifically focusing on the scope of the "your work" exclusion. Id. at 249-51. The court, therefore, had no need to consider the existence of an "occurrence," and its analysis is inapposite here.[3]

---

[3] The Carpet Center also argues that I should deny Patriot's summary judgment motion because the "exact nature and extent of the damages claimed" in the underlying suit have not yet been established. See Doc. No. 22 at 2-3; Doc. No. 24 at 2. The Carpet Center's argument, reasonably construed, invokes Federal Rule of Civil Procedure 56(d). Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" to a motion for summary judgment, then the "court may . . . defer considering the motion or deny it . . . ." Fed. R. Civ. P. 56(d). Typically, a Rule 56(d) motion "must: (1) be timely; (2) be authoritative; (3) show good cause for failure to discover the relevant facts earlier; (4) establish a plausible basis for believing that the specified facts probably exist, and (5) indicate how those facts will influence the outcome of summary judgment." Pina v. Children's Place, 749 F.3d 785, 794 (1st Cir. 2014). Although these requirements are treated flexibly, and "one or more … may be relaxed, or even excused," In re PHC, Inc. Shareholder Litigation, 762 F.3d 138, 143 (1st

## IV. CONCLUSION

For the reasons stated in this Memorandum and Order, I grant Patriot's motion for summary judgment (Doc. No. 21). The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

                                          /s/Paul Barbadoro
                                          Paul Barbadoro
                                          United States District Judge

October 24, 2017

cc:   Laura M. Gregory, Esq.
      Brian W. Haynes, Esq.
      Anthony J. Antonellis, Esq.
      Edward D. Philpot, Jr., Esq.

---

Cir. 2014), Rule 56(d) clearly demands a certain degree of specificity. See Rodriguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina, 532 F.3d 28, 31 (1st Cir. 2008). Thus, "speculative assertions" that future discovery will generally help defeat a motion for summary judgment are insufficient for obtaining relief under this rule. See Williams v. Techtronic Indus. of North America, Inc., 600 Fed. Appx. 1 (Mem) (1st Cir. 2015).

    Here, not only has the Carpet Center failed to comply with many of the other formal requirements discussed above, it has crucially failed to specifically identify what it would hope to learn through more discovery, other than "the nature and extent of damages" in the abstract sense. Such a speculative claim of a general nature is insufficient to invoke relief under Rule 56(d). See C.B. Trucking Inc. v. Waste Management, Inc., 137 F.3d 41, 45 (1st Cir. 1998).